Henry G. Small v. Commissioner.
Small v. Commissioner
Docket No. 48953.
United States Tax Court
T.C. Memo 1954-230; 1954 Tax Ct. Memo LEXIS 19; 13 T.C.M. (CCH) 1155; T.C.M. (RIA) 54335; December 20, 1954, Filed *19 Held: Petitioner was engaged in the real estate business during part of the year 1948 in partnership with his then wife, Mary. Kenneth W. Bergen, Esq., and Donald O. Smith, Esq., for the petitioner. Jack H. Calechman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax of petitioner for the year 1948 in the amount of $941.26. This proceeding is a companion case to Mary W. Conrad, Docket No. 41019, the opinion in which is handed down and filed simultaneously herewith. The cases were tried separately. The issues to be resolved here are: (1) Whether petitioner and Mary W. Small were partners for income tax purposes during the period January 1, 1948, through October 16, 1948, in the conduct of a real estate business, and (2) whether the deficiency in question is barred by the statute of limitations. Findings of Fact Petitioner, Henry G. Small, is an individual now residing at Orono, Maine. During the taxable year 1948, he was a citizen and resident of Holderness, Grafton County, New Hampshire, and he filed his individual income tax return for such year on March 15, 1949, with the *20 collector of internal revenue for the district of New Hampshire. Therein, petitioner reported, among other things, partnership income in the amount of $4,198.09. Under date of November 4, 1948, petitioner also filed with such collector a partnership return of income for the taxable year 1948, in which was reported the net income of the partnership of "Henry G. Small - Mary W. Small" in the amount of $8,396.19. Prior to 1944, petitioner was engaged in the automobile tire business in Laconia, New Hampshire. His conduct of such business did not result in a wide acquaintance with the people in the Plymouth-Holderness area. Petitioner met Mary W. Small (now known as Mary W. Conrad and hereinafter referred to as Mary) in 1944. Thereafter, they were married in February, 1945. Mary had lived in the Plymouth-Holderness area during most of her life and had a wide acquaintance among the residents of that area. She had engaged in the real estate business since 1932. At or about the time of their marriage, petitioner and Mary decided that it would be to their mutual advantage for the former to join the latter in the real estate business. Petitioner and Mary worked for a short period in early *21 1945 with a real estate firm in Laconia, New Hampshire. Mary having acquired a house in Holderness, she and petitioner decided that it would be practicable for them to open a real estate business on their own in the Plymouth-Holderness area, which they did beginning in late spring or early summer of 1945. No partnership application was ever filed with the Secretary of State of New Hampshire as required by the law of that state. Petitioner had previously filed a trade name with the Secretary of State under the same statute as applies to partnerships. At the beginning of their real estate operation, the business of Mary and petitioner consisted primarily of transactions involving summer rentals and sales of summer cottages and resort properties. During the first year of such business, an important source of business contracts for petitioner and Mary was an insurance agency located in Plymouth, which source had been previously acquired by Mary. Another source of business was the New Hampshire State Planning and Development Commission, which put out inquiries on behalf of persons who wished to acquire property in New Hampshire. Mary wrote and typed most of the letters in reply to these *22 inquiries. Mary was admittedly actively engaged in real estate from 1932 through 1947 and from the latter part of 1948 up to the time of the hearing in the present proceeding. Prior to his marriage to Mary, petitioner had no experience in the real estate business. He learned virtually all he knew about such business from Mary. Petitioner and Mary filed a partnership return of income for the year 1947. Late in 1947, petitioner's attorney and friend, Hazen Sturtevant, was elected president of the Plymouth, New Hampshire, Chamber of Commerce. Sturtevant asked petitioner to accept the office of secretary of that organization, which petitioner did after a discussion with Mary. It was necessary for petitioner's effective performance of that office that a business office be acquired in the Plymouth business section. Petitioner and Mary discussed this matter and agreed to open such an office. On or about January 1, 1948, petitioner opened a real estate office in Plymouth. Office furnishings, including a desk for Mary, were acquired therefor by petitioner and Mary. At the outset and for approximately a month to a month and a half, Mary came into the Plymouth office quite regularly. Mary *23 did not approve of the secretary that was hired and for a time quit coming in regularly. Following the discharge of such secretary, Mary again came to the office occasionally, although not as regularly as she had in the past. She saw customers and had access to the office files. During this period, a substantial amount of Mary's real estate operations was carried on from the Small home in Holderness from where the business had previously been conducted. Also petitioner carried on a substantial portion of his real estate activities from such place. Real estate rentals, very few of which necessitated the actual showing of property, were handled through the mails. Prior to and during 1948, Mary handled virtually all such rentals. With one exception, Mary did not participate in the financing and agreement for sales of real estate during the period in question. Between February and October, 1948, Mary participated to some extent in 17 real estate transactions, the total commissions from which amounted to $7,248. During and prior to 1948, the stationery used in the business conducted by the petitioner and Mary was headed, as follows: "MARY W. SMALL-HENRY G. SMALL REAL ESTATE" No *24 other stationery was used in the business. Prior to and during 1948, the printed sales agreement forms which were used contained the names "Mary W. Small & Henry G. Small." Such forms had been purchased in 1945. From time to time during 1948, advertisements appeared in the Boston and New York newspapers which used the business name of "Mary W. Small-Henry G. Small." "Previews", a Summer Property Yearbook for the Year 1948, contained a listing by petitioner and Mary using the address of Plymouth, R.F.D. 3, New Hampshire; phone Plymouth 157 W-4. Such address and phone number is that of the residence owned by the petitioner and Mary in Holderness. The 1948 listings carried the office address and phone number. Both parties used the Holderness telephone to make some business calls in 1948. Mary and petitioner were members of a number of associations of real estate brokers throughout 1948. Dues for Mary's membership were paid in September of 1948. In that year the title to the Holderness residence which had been in Mary's name was transferred and placed in the joint tenancy of Mary and petitioner. Mary and petitioner lived together and did not become estranged until October, 1948. *25 Commissions from real estate operations in 1948 were deposited in the Pemigewasset National Bank, Plymouth, New Hampshire; Plymouth Guaranty Savings Bank, Plymouth, New Hampshire, and Meredith Village Savings Bank, Meredith, New Hampshire. The accounts in the two savings banks were joint accounts, which had total balances on September 1, 1948, immediately prior to the estrangement of Mary and petitioner, in the amount of $11,526.72. Deposits made to the joint checking account maintained by Mary and petitioner during 1948 totaled $14,137.97. Although Mary had access to the accounts, petitioner generally wrote the checks, paid the bills and took care of all the money. Mary drew checks in 1948 aggregating at least $1,706.30, including one check in the amount of $1,206.30 in payment of her 1947 Federal income tax liability. Petitioner withdrew all funds from these joint accounts on October 4, 1948. Throughout 1948, Mary maintained her own separate checking account in which was deposited income received by her from an inheritance. She did not deposit any of such income in any of the accounts in which real estate commissions were deposited. She received no distribution of the income *26 earned in the first nine months of 1948. Petitioner, prior to and at the time of his estrangement from Mary, maintained a separate individual savings account, the balance in which was $4,721.83 on October 1, 1948. This account was also closed out on October 4, 1948. Petitioner closed the accounts on advice of counsel. After petitioner and Mary became estranged in late September or early October, 1948, Mary addressed, on October 4, 1948, a petition to the Superior Court of Grafton County, New Hampshire, requesting, inter alia, the establishment of her rights in property and alleging in part, as follows: "5. The said Mary W. and Henry G. Small hold as joint tenants real estate situated in said Holderness which was aquired by her prior to marriage and to which as against said Henry G. Small she is equitably entitled. The said parties own and conduct a real estate brokerage business known as the 'Small Agency', the good will, listings and other property of which were largely acquired by the said Mary W. Small prior to marriage. They also have funds deposited in certain banks and other property acquired during coveture to which the said Mary W. Small has largely contributed through *27 her efforts. They also have certain household furniture and furnishings which are located in the home in said Holderness and which with minor exceptions belong to her." Thereafter, on or about October 10, 1948, a conference of the parties and their respective representatives was held for the purpose of effecting a property settlement between petitioner and Mary. Petitioner was advised by counsel that he had grounds for divorce against Mary. As a result of the conference, a property settlement agreement in the form of a stipulation was signed by the parties, which stipulation was later incorporated by reference in the decree of divorce granted the parties on December 7, 1948. Such stipulation reads in material part, as follows: "1. Henry G. Small shall execute to Mary W. Small a quitclaim deed of all his right, title and interest in and to real estate situate in Holderness, New Hampshire heretofore held by the Parties in joint tenancy, and it is decreed that Henry G. Small is divested of any interest in the said real estate. "2. Henry G. Small shall execute and deliver to Mary W. Small a bill of sale of all his right, title and interest in and to the real estate business heretofore *28 conducted by the parties in Plymouth, New Hampshire including the office furniture, office space, good will, listings and any and all other personal property used in said real estate business. "3. Henry G. Small shall be entitled to commissions from the Deep River Cabins sale, the Reporter Press sale and the Grover sale. "4. The said Henry G. Small shall not open a real estate office in the towns of Plymouth, Holderness or Ashland so long as Mary W. Small shall be actively engaged in the real estate business in said Plymouth; and the said Henry G. Small shall pay to Mary W. Small an amount equal to one-half of the money received by him as commission on any property sale he may make in the towns of Holderness and Plymouth. "5. With the exception of one antique bureau, one antique mirror and one set of brass andirons all of which were formerly the property of Elizabeth Small and which are acknowledged to be the property of Henry G. Small, all household furniture in the home of the parties in said Holderness is decreed to be the property of Mary W. Small. "6. The said Henry G. Small shall pay to Mary W. Small the sum of five thousand dollars ($5000) in lieu of alimony or support; *29 twenty-five hundred dollars ($2500) of which shall be paid on the granting of the divorce and approval of this stipulation; the additional twenty-five hundred dollars ($2500) shall be paid on January 15, 1949." On October 28, 1948, petitioner executed a bill of sale in pursuance of the foregoing stipulation. In his individual income tax return for 1948, petitioner reported, in addition to partnership income above referred to, commissions earned from October 15, 1948 to December 31, 1948 in the amount of $1,400, dividends of $12.25 and interest of $135.26. The statutory notice of deficiency as to the year 1948 was mailed to petitioner on April 8, 1953. Petitioner and Mary were partners in the conduct of the real estate business in Plymouth and Holderness, New Hampshire, during the period January 1, 1948 to about October 16, 1948. Opinion VAN FOSSAN, Judge: The fundamental question to be resolved here is whether petitioner and Mary were partners for tax purposes in the conduct of the real estate business in Holderness and Plymouth, New Hampshire, during the period January 1, 1948, through October 16, 1948. Respondent has declined to recognize the existence of any partnership *30 and would tax to petitioner the total amount of the profits derived from the business during such period. That a partnership relation existed between petitioner and Mary prior to 1948 is not disputed. Nor does respondent deny that Mary was active in the real estate business from 1932 through 1947 and subsequent to October, 1948. Rather, it is his theory that, during the period in controversy, Mary withdrew from active participation in the business, became a housewife and performed no duties outside those expected of a loyal wife. As laid down by the Supreme Court in ; ; and , the test for determining the existence of a partnership and its validity for tax purposes is whether the parties involved, acting in good faith and with a business purpose, really and truly "* * * intended to join together in the present conduct of the enterprise. * * *". The intention of the parties, their good faith and business purposes in so joining together are factual conclusions to be drawn from a close survey of "* * * the agreement, the conduct of the *31 parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent * * *." Thus the question is essentially one of fact of which our ultimate finding above is dispositive. No useful purpose would be served by prolonging this opinion with a detailed analysis of the evidence leading us to such conclusion. Suffice it to say, we have taken into account all aspects of the factual situation here present in the light of the foregoing test and have assayed all evidence bearing thereupon. Facts tending to show the existence of a partnership relationship have been placed in juxtaposition with those tending to the opposite conclusion. Based upon our consideration thereof, we have concluded and found as a fact that such relationship did exist during the period in dispute. Consequently, we here so hold. Respondent's determination to the contrary is reversed. In view of such holding, the question posed by petitioner *32 with respect to the statute of limitation is moot and no discussion thereof is necessary. Decision will be entered for the petitioner.